IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAVID WALLACE JONES, ) | Civil Action No. 7:13-cv-00561 | |
|     Petitioner, ) | | |
| ) | | |
| v. ) | **MEMORANDUM OPINION** | |
| ) | | |
| HAROLD W. CLARKE, ) | By: Hon. Michael F. Urbanski | |
|     Respondent. ) | United States District Judge | |

David Wallace Jones, a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Respondent filed a motion to dismiss, and the time for Petitioner to respond expired, making the matter ripe for disposition. After reviewing the record, the court dismisses the habeas claims as meritless.

I.

After a bench trial, the Circuit Court for Pittsylvania County sentenced Petitioner to an active sentence of ten years' incarceration for statutory burglary and grand larceny.[1] Petitioner's appeals to the Court of Appeals of Virginia and Supreme Court of Virginia were unsuccessful.

Petitioner filed a petition for a writ of habeas corpus in the Circuit Court for Pittsylvania County that presented claims of ineffective assistance of trial counsel. Per the Circuit Court's order, Respondent's counsel mailed a motion to dismiss to both Petitioner and the Circuit Court on March 20, 2013. The copy of the motion to dismiss sent to Petitioner allegedly included a proposed final order, but Respondent's counsel explained to the Circuit Court in a letter accompanying the motion to dismiss that a proposed final order would be sent to the Circuit Court approximately fourteen days later.

---

[1] Notably, the Circuit Court dismissed charges of statutory burglary and third offense petit larceny pursuant to trial counsel's motion to strike. The Circuit Court also sentenced Petitioner on separate charges of statutory burglary and grand larceny in separate cases, but those charges, to which Petitioner pleaded guilty, are not challenged in the instant petition.

Petitioner filed a "motion to proceed" on April 8, 2013, that addressed the motion to dismiss and asked the Circuit Court to grant habeas relief. On April 9, 2013, the Circuit Court judge signed and entered Respondent's proposed final order, which was nearly identical to the wording of the motion to dismiss. The Supreme Court of Virginia refused a subsequent petition for appeal.

In the instant, timely-filed petition, Petitioner argues that the Circuit Court violated the United States Constitution by signing the proposed dismissal order prepared by Respondent's counsel. Petitioner further argues that trial counsel rendered ineffective assistance by not calling Petitioner's mother as an alibi witness and not conducting a pre-trial investigation to effectively cross examine the prosecution's witnesses. Respondent concedes that the claims are exhausted but argues that they do not entitle Petitioner to relief. The court agrees and dismisses the petition.

## II.

A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). After a state court addresses the merits of a claim also raised in a federal habeas petition, a federal court may not grant the petition unless the state court's adjudication of a claim is contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413.

A federal court may also issue the writ under the "unreasonable application" clause if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. This reasonableness standard is an objective one. Id. at 410. A Virginia court's findings cannot be deemed unreasonable merely because it does not cite established United States Supreme Court precedent on an issue if the result reached is not contrary to that established precedent. Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006). Finally, "[a] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010).

**A.**

Petitioner argues that due process and equal protection rights were violated when the state habeas court adopted "ex-parte findings of fact[] and conclusions of law verbatim" by

signing and entering the final order proposed by Respondent. "[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief." Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); see Pennsylvania v. Finley, 481 U.S. 551, 557 (1987) (holding there is no constitutional right to state post-conviction review). This holding applies even when a state habeas court directs the state to draft the order denying a petitioner's habeas claims. Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008).[2]

Furthermore, no violation of due process or equal protection occurred.[3] The Circuit Court was permitted to resolve the case on the record before it without holding an evidentiary hearing. VA. CODE § 8.01-654(5). Petitioner's "motion to proceed" clearly establishes that Petitioner received the motion to dismiss prepared by Respondent. In the "motion to proceed," for example, Petitioner disagreed with counsel's affidavit attached to the motion to dismiss; addressed Respondent's counsel by name, a fact which was apparent on the motion to dismiss; and rebutted specific arguments presented in the motion to dismiss. Petitioner availed himself of the opportunity to address Respondent's particular arguments about each claim and reiterated why he was entitled to habeas relief, and the proposed final order was worded almost identically to the motion to dismiss. Consequently, the court finds that Petitioner had the notice and opportunity to oppose the factual and legal bases of the proposed final order. See In re Harper, 725 F.3d 1253, 1258 (10th Cir. 2013) (recognizing notice and opportunity are integral to due process). Accordingly, this claim must be dismissed.

---

[2] Accord Word v. Lord, 648 F.3d 129, 131 (2d Cir. 2011); Bell-Bey v. Roper, 499 F.3d 752, 756 (8th Cir. 2007); Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004); Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998); Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987); Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986).

[3] Petitioner relies only on the phrase "equal protection" to state such a claim, which alone cannot be a basis for relief. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Equal Protection Clause directs that all persons similarly situated should be treated alike, but Petitioner wholly fails to describe how he was treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985).

**B.**

In his first claim of ineffective assistance of counsel, Petitioner argues that counsel was ineffective by not calling his mother, Connie Palmer, to testify as an alibi witness. Petitioner argues in his second claim that counsel was ineffective for not conducting a pre-trial investigation in order to effectively cross-examine the prosecution's witnesses.

Neither of these claims states a violation of the Sixth Amendment right to effective counsel. A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The first prong of Strickland requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness.[4] Strickland, 466 U.S. at 687-88. The second prong of Strickland requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id.

In his first claim of ineffective assistance of counsel, Petitioner argues that counsel was deficient for not calling his mother to testify as an alibi witness during trial. Petitioner alleges that his mother told counsel that Petitioner could not have committed the offenses on October 16,

---

[4] Strickland established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential[,]" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time." Id.

2010, because she was with him on that day.[5] Petitioner explains that, when he asked counsel after trial why his mother did not testify, counsel replied, "I didn't think that she was needed."

After reviewing this same claim, the Circuit Court held:

> Upon reviewing the record, including affidavit of trial counsel, the [Circuit] Court finds that [this claim] satisfies neither the "performance" nor "prejudice" prong of Strickland. Jones has not provided an affidavit from his mother as to what her testimony would have been. Thus, Jones cannot show that his mother would have testified or that her testimony would have likely probably changed the outcome of the trial. See Muhammad v. Warden, 274 Va. 3, 18, 646 S.E.2d 182, 195 (2007) (dismissing claim where petitioner failed [to] proffer any expert affidavits to demonstrate what information these experts could have provided at trial).
>
> Moreover, after discussing with trial counsel whether to call his mother, Jones agreed not to call her. See Hedrick v. Warden, 264 Va. 486, 505, 570 S.E.2d 840, 852 (2002) ("Petitioner cannot, in a subsequent habeas corpus petition, assert that he was prejudiced by trial counsel's performance simply because [counsel] followed his directive."). On the day of trial, Jones' mother was very anxious and upset, causing trial counsel to have real concerns in her ability to withstand cross-examination and keep the facts straight. Having determined that her testimony contained no crucial evidence and provided little to the defense, trial counsel advised Jones against calling his mother as a witness. Jones agreed not to call any witnesses. Considering these circumstances, Jones has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Jones v. Clarke, No. CL13000056-00, slip op. at 4-5 (Cir. Ct. Pittsylvania Cnty. Apr. 9, 2013).

The Circuit Court's finding is not based on an unreasonable determination of the facts or contrary to or an unreasonable application of federal law. Petitioner believes that the Circuit Court's findings of facts are invalid because he was denied a "fundamental right" to present witnesses and confront his accusers at an evidentiary hearing. Nonetheless, a state court's fact-finding procedure is entitled to deference, even if the factual issues were decided by affidavits and without live testimony. See, e.g., Fitzgerald v. Greene, 150 F.3d 357, 369 (4th Cir. 1998) ("Moreover, that the state habeas court dismissed Fitzgerald's claims based upon affidavits does

---

[5] In support of this claim, Petitioner filed his mother's affidavit that is dated March 26, 2013.

not render the proceeding less than full and fair."). Furthermore, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and consequently, the court cannot consider Palmer's affidavit executed on March 26, 2013, and filed in the first-instance with this court. Pinholster, 131 S. Ct. at 1398.

The evidence before the state habeas court established that the decision whether to call Palmer as a witness was discussed with Petitioner, and on account of counsel's concerns with Palmer's potential testimony, Petitioner agreed to not call his mother as a witness. Given counsel's concerns with the negative aspects of Palmer's testimony, counsel advised Petitioner, as a strategic decision, that the risk of the testimony outweighed any potential benefit. See Bunch v. Thompson, 949 F.2d 1354, 1364 (4th Cir. 1991) (recognizing that "the best course for a federal habeas court is to credit plausible strategic judgments" when evaluating ineffectiveness claims). Petitioner did not submit evidence to the Circuit Court of what the alibi testimony would have been, and therefore, Petitioner failed to establish prejudice from counsel's decision to not call Palmer as a witness. Accordingly, this claim must be dismissed.

For the second ineffective assistance claim, Petitioner argues that counsel was deficient for not conducting a pre-trial investigation to effectively cross examine prosecution witnesses Janey Anderson, Shaun Barley, Bobby Luck, and Lashanda Moon. Petitioner argues that an adequate pre-trial investigation of the alleged crime scene, police investigation reports, witness statements to police, and the "real facts" would have revealed impeachment material. Petitioner believes that, had counsel adequately prepared for cross examination, counsel could have proven that Anderson could not see the part of Petitioner's home where the stolen items were hidden; Anderson offered Barley money to testify against him; and that Barley's, Luck's, and Moon's testimonies at trial differed from their statements to the police investigator.

After reviewing this claim presented in the state habeas petition, the Circuit Court held:

> Upon reviewing the record, including affidavit of trial counsel, the [Circuit] Court finds that [this] claim [] satisfies neither the "performance" nor "prejudice" prongs of the test for ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 687 (1984). At trial, the Commonwealth introduced a photograph, showing that Anderson could see Jones' property from her property. Anderson testified that, while using binoculars, she observed Jones walk to a trailer on his property and pull up the trailer's underpinning. Anderson did not see Jones take anything out from underneath the trailer, but did see him and Shaun Barley carrying her green tote bags back to his home. Approximately ten minutes later, Barley and Lashanda Moon went [to] Anderson's home and gave her the tote bags and a trash bag, containing a number of her stolen items. Moon's testimony corroborated Anderson's account.
>
> Trial counsel reviewed the Commonwealth's photographs with Jones prior to trial. Jones never indicated to trial counsel that his property could not have been seen from Anderson's property. And the photographs Jones provides with his petition for writ of habeas corpus do not "undermine confidence in the outcome" of the trial. Strickland, 466 U.S. at 694.
>
> * * *
>
> [C]ross-examination is generally a matter of trial strategy that cannot be second guessed in a collateral habeas proceeding. See Sallie v. North Carolina, 587 F.2d 636, 640 (4th Cir. 1978). Here, despite being a Commonwealth's witness, Barley generally testified in Jones' favor. Choosing not to cross-examine Barley about an unconfirmed incident with another witness constitutes a matter of trial strategy. Second, cross-examination of a witness is limited to matters elicited on direct examination. Smith v. Irving, 268 Va. 496, 501, 604 S.E.2d 62, 65 (2004). Questioning Barley about Anderson's alleged bribe would have been beyond the scope of direct examination. Third, Jones and his trial counsel discussed recalling Barley and whether there was anything else Jones wanted to present into evidence. Jones agreed to rest his case without recalling Barley. Finally, Jones has not proffered an affidavit from Barley.
>
> * * *
>
> According to Investigator Davis' report, Luck gave Jones $25 in exchange for $25 in quarters. At trial, Luck testified he gave Jones $10 for a coffee container containing between $80 and $100 in quarters. Anderson testified that she had coffee containers of coins stolen from her home. Trial counsel did not question Luck about the inconsistency in value of the coins; however, cross-examination is generally a matter of trial strategy that cannot be second guessed in a collateral habeas proceeding. See Sallie, 587 F.2d at 640. In light of the potentially harmful information about Jones contained in the investigator's reports, counsel's decision not to present more detail regarding those reports constitutes a matter of trial strategy. The particulars of those reports "would have represented a 'two edged sword' that counsel often confront when constructing the strategy

most likely to assist rather than harm a client." Lenz v. Warden of the Sussex I State Prison, 267 Va. 318, 337, 593 S.E.2d 292, 303 (2004). Further, the value of the coins was not a material matter that would likely "undermine the confidence" of the trial. Strickland, 466 U.S. at 694. And even without Luck's testimony, the evidence shows that other witnesses saw Jones with Anderson's stolen property.

\* \* \*

Finally, Jones asserts his counsel failed to challenge the inconsistencies in Moon's testimony. According to Investigator Davis' report, Moon spoke to Jones about Anderson's stolen property and Jones had said he had already got rid of Anderson's jewelry. At trial, Moon testified she did not speak to Jones. In light of the information contained in the investigator's reports, counsel's decision not to present more detail regarding those reports constitutes a matter of trial strategy. See Sallie, 587 F.2d at 640. Again, the particulars of those reports "would have represented a 'two edged sword' that counsel often confront when constructing the strategy most likely to assist rather than harm a client." Lenz, 267 Va. at 337, 593 S.E.2d at 303. Furthermore, Anderson observed Jones with her stolen property, corroborating much of Moon's testimony. Thus, Jones has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Jones, No. CL13000056-00 at 3, 5-9 (state record citations omitted).

The Circuit Court of Pittsylvania County's findings are not based on an unreasonable determination of the facts or contrary to or an unreasonable application of federal law. Anderson testified that she used binoculars to see the green tote bags in Petitioner's possession after he reached under a trailer on his property and that the same green tote bags were returned to her home with her possessions. Tr. 54-58. Barley's testimony was, in fact, more helpful to Petitioner because he denied knowing anything about Petitioner's involvement with the stolen possession, and thus, it was prudent not to accuse Barley of being a liar during cross examination. It was reasonable for counsel to avoid discussing Luck's and Moon's statements in police reports when those statements were more incriminating than their testimony. While there were differences between trial testimony and statements to investigators, none of the differences were material enough to cause a reasonable probability that the result of the proceeding would

have been different had counsel focused on the differences during cross examination. Accordingly, this claim must be dismissed.

### III.

For the foregoing reasons, the court grants the motion to dismiss and dismisses the petition for a writ of habeas corpus. Based upon the court's finding that Petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

Entered: July 24, 2014

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge